**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| STATE OF OHIO, ex rel. | ) | CASE NO. 1:15-CV-00679-DCN |
| MICHAEL DeWINE, | ) | |
| OHIO ATTORNEY GENERAL, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
|  | ) | |
| UNITED STATES ARMY CORPS | ) | |
| OF ENGINEERS, et al. | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

## ANSWER

Defendants (collectively the "Corps") hereby respond to the separately numbered Paragraphs of Plaintiff's Complaint for Declaratory Judgment and Injunctive Relief and respond as follows:

1.   The Corps denies the allegations in Paragraph 1 of the Complaint.

2.   In response to the allegations in Paragraph 2 of the Complaint, the Corps admits that it has previously dredged Cleveland Harbor and portions of the Cuyahoga River to remove sediment that had accumulated on the bottom of the Federal Navigation Channel in order to facilitate navigation of cargo ships through the channel at the Harbor.  The Corps admits that in some circumstances, dredging may be necessary for deep draft cargo ships to reach certain facilities

along the Cuyahoga River   The Corps denies the remaining allegations in Paragraph 2 of the Complaint.

3.  In response to the allegations in Paragraph 3 of the Complaint, the Corps admits that confined disposal facilities (CDFs) are typically large enclosed embankments.  The Corps admits that it has placed substantially all of the material dredged from Cleveland Harbor in CDFs over the last 40 years, except for the material the Corps placed in the open lake between 1985 and 1993.  The Corps denies the remaining allegations in Paragraph 3 of the Complaint.

4. The Corps admits that, with respect to its 2015 dredging project in the Cleveland Harbor Federal Navigation Channel, the Corps has determined that sediment from certain areas of the Cleveland Harbor Federal Navigation Channel (the "Sixth Mile Sediment") is suitable for open-lake placement in Lake Erie.  The Corps admits that Ohio disagrees with this determination.  The Corps denies the remaining allegations in Paragraph 4 of the Complaint.

5. The allegations in Paragraph 5 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 5 also purport to paraphrase statutes and regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes and regulations, the allegations are denied.

6. The Corps admits that it has determined that open-lake placement of the Sixth Mile Sediment is suitable for open-lake placement under the Federal Standard.  The Corps admits that the State of Ohio has issued a letter dated March 31, 2015, relating to water quality certification that does not authorize open-lake placement of dredged material from Cleveland Harbor in Lake Erie in 2015 but the Corps denies that the sediment is not suitable for open-lake placement.  The Corps admits that, under the Federal Standard, the Corps identifies the "least costly alternatives

consistent with sound engineering practices and meeting the environmental standards established by the 404(b)(1) evaluation process." 33 C.F.R. § 335.7.  The Corps admits that it has requested that a non-Federal partner pay the cost differential between the cost of open-lake disposal of the Sixth Mile Sediment and disposal of this sediment in a CDF.  The Corps admits that when it submitted its proposed budget for 2015 to Congress, it planned to place the dredged sediment from the 2015 project into CDFs at federal expense.  The Corps further avers that after evaluation in 2013 of extensive sediment testing conducted in 2012 showed the dredged material suitable for open lake placement, the Corps determined in 2014 that CDF placement of material dredged from the Sixth Mile for the 2015 Project was no longer cost-justified.  The Corps denies the remaining allegations in Paragraph 6 of the Complaint.

7. The Corps denies the allegations in Paragraph 7 of the Complaint.

8.  The Corps lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 8 of the Complaint, and therefore denies them.

9.  The Corps admits that it is an agency of the Federal government and that among its responsibilities are the operation and maintenance of Federal Navigation Channels in the Great Lakes harbors and connecting channels in a manner consistent with all applicable environmental standards and requirements.  The Corps admits it makes discretionary determinations as to how to use its limited budget to best pursue its numerous responsibilities.  The Corps denies the remaining allegations in Paragraph 9 of the Complaint.

10.  The Corps admits the allegations in Paragraph 10 of the Complaint.

11.  The Corps admits the allegations in Paragraph 11 of the Complaint.

12.  The Corps admits the allegations in Paragraph 12 of the Complaint.

13.  The Corps admits the allegations in Paragraph 13 of the Complaint.

14.  The Corps admits the allegations in Paragraph 14 of the Complaint.

15.  The allegations in Paragraph 15 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 15 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.  The Corps admits that this matter involves a Federal agency of the United States as a Defendant.

16.  The Corps admits that there is a present, justiciable controversy between the parties. The Corps denies the remaining allegations in Paragraph 16 of the Complaint.

17. The allegations in Paragraph 17 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 17 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

18.   The allegations in Paragraph 18 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 18 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

19.  The allegations in Paragraph 19 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 19 also purport to paraphrase a statute and the legislative history for that statute, which speak for themselves and are the best evidence of

their content.  To the extent the allegations are inconsistent with the cited statutes or the legislative history, the allegations are denied.

20.  The allegations in Paragraph 20 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 20 also purport to quote a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

21. The allegations in Paragraph 21 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 21 also purport to paraphrase a statute and quote from a Congressional Conference Committee report, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

22.  The allegations in Paragraph 22 of the Complaint state legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

23. The allegations in Paragraph 23 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 23 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

24.  The allegations in Paragraph 24 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 24 also purport to paraphrase a regulation, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

25.    The allegations in Paragraph 25 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 25 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

26. The allegations in Paragraph 26 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 26 also purport to paraphrase a statute and regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statute or regulations, the allegations are denied.

27.  The allegations in Paragraph 27 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 27 also purport to quote a Senate Committee Report, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited report, the allegations are denied.

28.  The allegations in Paragraph 28 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 28 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

29.  The allegations in Paragraph 29 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 29 also purport to paraphrase the legislative history of a statute and quote from a Senate Committee report, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

30. The allegations in Paragraph 30 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 30 also purport to paraphrase and quote from a Congressional Conference Committee report, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited report, the allegations are denied.

31.  The allegations in Paragraph 31 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 31 also purport to paraphrase a statute and regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

32.  The allegations in Paragraph 32 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 32 also purport to paraphrase a statute and regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

33.  The allegations in Paragraph 33 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 33 also purport to paraphrase and quote sections of Title 5 of the U.S. Code, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

34.  The allegations in Paragraph 34 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 34 also purport to paraphrase a section of Title 5 of the U.S. Code, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

35.  The allegations in Paragraph 35 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 35 also purport to paraphrase a section of Title 5 of the U.S. Code, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

36.  The allegations in Paragraph 36 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 36also purport to paraphrase regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

37.  In response to the allegations in Paragraph 37 of the Complaint, the Corps admits that it is the federal agency responsible for dredging the federal navigation channels.  The Corps also admits that, when performing its dredging duties, the Corps must comply with applicable environmental laws and regulations.  The Corps denies the remaining allegations in Paragraph 37 of the Complaint.

38.  The allegations in Paragraph 38 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 38 also purport to paraphrase or quote 33 U.S.C. §§ 426o-1, 426o-2, which speak for themselves and are the best evidence of their content. To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

39.  The allegations in Paragraph 39 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 39 also purport to paraphrase or quote Ohio Rev. Code § 6111.01(H) which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.  The Corps admits that the Cuyahoga River exists wholly within the State of Ohio.  The Corps admits

that the Cuyahoga River originates in Geauga County, Ohio, flows south to Akron, Ohio, then flows back north, and ultimately enters Lake Erie through the Cleveland Harbor.

40.  In response to the allegations in Paragraph 40 of the Complaint, the Corps admits that the Cleveland Harbor Federal Navigation Channels consist of approximately 5.5 miles along the Cleveland shoreline that is enclosed by breakwater structures, approximately 5.8 miles of the lower Cuyahoga River, and approximately 1 mile of the Old River.

41.  In response to the allegations in Paragraph 41 of the Complaint, the Corps states that Plaintiff is defining terms for use in its Complaint and there are no facts to admit or deny.

42.  The Corps admits that Cleveland Harbor is a deep draft commercial harbor located on Lake Erie in Cuyahoga County, Ohio.  The Corps also admits that Cleveland Harbor is the 50th-largest port by weight of cargo in the United States.

43.  The Corps admits that it has regularly dredged Cleveland Harbor and that the Corps is authorized to dredge to depths ranging from 25 to 29 feet below LWD in the Outer Harbor Channels and to 18 to 27 feet in the Cuyahoga River and Old River Channels. The Corps denies the remaining allegations in Paragraph 43 of the Complaint.

44.  The Corps admits that, for certain cargo ships, if the Cleveland Harbor Federal Navigation Channel is not dredged, portions of the navigation channel will likely eventually become unnavigable.  Further, the Corps admits that some industrial entities use the Cleveland Harbor as a preferred method to receive raw materials and to ship finished products.  The Corps denies the remaining allegations in Paragraph 44 of the Complaint.

45.  The Corps admits that it has previously dredged the Cleveland Harbor on an annual basis in part because sediment accumulates at the bottom of the Harbor throughout the year due to the natural flow of the Cuyahoga River.  The Corps admits that removal of sediment through dredging typically creates a void and that small quantities of material from the edges of that void may fall into that void and become interspersed with other sediment as it accumulates.  The Corps denies the remaining allegations in Paragraph 45 of the Complaint.

46.  The Corps admits that, depending on the condition of the Cuyahoga River and the amount of sediment accumulation, is it not uncommon for cargo ships to have light loads at the beginning of the shipping year, which starts soon after the ice thaws each year.  The Corps lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 46 of the Complaint, and therefore denies them.

47.  The Corps admits that in recent years it has removed approximately 225,000 cubic yards of sediment from Cleveland Harbor, but avers that in previous years it has removed approximately 330,000 cubic yards of sediment.  The Corps admits the remaining allegations in Paragraph 47 of the Complaint.

48.  The Corps admits that CDFs are typically large embankments.  The Corps admits that over the last 40 years it has placed substantially all of the material dredged from Cleveland Harbor in CDFs except for the material that the Corps placed in the open lake between 1985 and 1993.  The Corps denies the remaining allegations of Paragraph 48 of the Complaint.

49.  The Corps admits that the CDFs referenced in Paragraph 49 are located near the Burke Lakefront Airport on the Lake Erie shoreline.  The Corps admits that CDFs 10B, 9, and 12 have sufficient space for dredged material from the Corps' 2015 dredging of the Cleveland Harbor

Federal Navigation Channel.  The Corps denies the remaining allegations in Paragraph 49 of the Complaint.

50.  The Corps admits that, during the last 40 years, CDFs have been used as a means for disposing of dredged material from the Cleveland Harbor Federal Navigation Channel and Cuyahoga River in instances in which the sediment was not suitable for open-lake placement in Lake Erie.  The Corps denies the remaining allegations in Paragraph 50 of the Complaint.

51.  The Corps admits that it samples and tests the material to be dredged from Cleveland Harbor for the presence of polychlorinated biphenyls (PCBs) and polycyclic aromatic hydrocarbon (PAHs) as potential contaminants of concern.  The Corps admits that the exact source of PCBs and PAHs in the Cleveland Harbor is unknown.  The Corps denies the remaining allegations contained in Paragraph 51 of the Complaint.

52.  The Corps admits that PCBs may be subject to bioaccumulation and that some PCBs are suspected human carcinogens and that some PAHs are known human carcinogens.  The Corps denies the remaining allegations contained in Paragraph 52 of the Complaint.

53.  The Corps denies the allegations contained in Paragraph 53 of the Complaint.

54.  The Corps admits that high enough levels of PAHs may be toxic if they are bioavailable. The Corps denies the remaining allegations contained in Paragraph 54 of the Complaint.

55. The Corps admits that it has tested the sediment in the Upper Cuyahoga Navigation Channel at various times, including in 2012.  The Corps admits that, for purposes of its 2015 dredging project, it has determined that the Sixth Mile Sediment is suitable for open-lake placement in Lake Erie.  The Corps denies the remaining allegations in Paragraph 55 of the Complaint.

56.    The allegations in Paragraph 56 of the Complaint state legal conclusions to which no response is required.  The Corps admits that the Corps regulates the disposal of the dredged material.

57.  The allegations in Paragraph 57 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 57 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

58.  The allegations in Paragraph 58 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 58 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

59.  The allegations in Paragraph 59 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 59 also purport to paraphrase statutes, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes, the allegations are denied.

60.  The allegations in Paragraph 60 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 60 also purport to paraphrase regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

61.  The allegations in Paragraph 61 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 61 also quote regulations, which speak for

themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

62. The allegations in Paragraph 62 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 62 also quote regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

63.  The Corps admits that it has asserted that after it has determined the Federal Standard, it cannot perform other more costly alternative disposal methods unless a non-Federal partner agrees to pay the difference in cost between the cost of the more expensive alternative and the cost of the Federal Standard.

64.  The Corps admits the Great Lakes Testing Manual is a nonbinding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the appropriate placement of dredged material.  The allegations in Paragraph 64 paraphrase the Great Lakes Testing Manual, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or Inland Testing Manual, the allegations are denied.  The Corps admits that Exhibit 1 to the Complaint appears to be a copy of the Great Lakes Testing Manual without appendices.  The Corps admits that, among other things, the Great Lakes Testing Manual addresses the sampling, testing, analysis, and evaluation of dredged material.  The Corps denies the remaining allegations of Paragraph 64.

65.  The Corps admits the Great Lakes Testing Manual is a non-binding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the

appropriate placement of dredged material.  The allegations in Paragraph 65 paraphrase the Great Lakes Testing Manual, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or Inland Testing Manual, the allegations are denied.  The Corps admits that the Great Lakes Testing Manual sets forth a four-tiered evaluation process.  The Corps admits that, as it proceeds with its analysis under the Great Lakes Testing Manual and Inland Testing Manual, it is permitted to make a determination after any tier that produces conclusive results and that, where results are inconclusive, it may proceed to the next tier.

66.  The Corps admits the Great Lakes Testing Manual is a non-binding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the appropriate placement of dredged material.  The allegations in Paragraph 66 paraphrase the Great Lakes Testing Manual, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or the Inland Testing Manual, the allegations are denied.  The Corps admits that Tier 1 of the Great Lakes Testing Manual includes procedures for the evaluation of sediment using historic data.  The Corps admits that Tier 2 of the Great Lakes Testing Manual includes procedures for evaluation of sediment using chemical analysis.  The Corps admits that Tier 3 of the Great Lakes Testing Manual includes procedures for evaluation of sediment using biological testing.  The Corps admits that, in instances in which Tier 4 testing is employed, it may include case-specific testing and evaluation to resolve conflicting or inclusive results generated by Tiers 1-3.

67.  The Corps admits the Great Lakes Testing Manual is a non-binding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the appropriate placement of dredged material.  The allegations in Paragraph 67 paraphrase and

14

quote the Great Lakes Testing Manual, which speaks for itself and is the best evidence of its content. To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or the Inland Testing Manual, the allegations are denied.

68. The Corps admits the allegations in Paragraph 68 of the Complaint.

69. The Corps admits the Great Lakes Testing Manual is a non-binding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the appropriate placement of dredged material. The allegations in Paragraph 69 purport to paraphrase and quote the Great Lakes Testing Manual, which speaks for itself and is the best evidence of its content. To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or the Inland Testing Manual, the allegations are denied.

70. The Corps admits that when sampling the DMMU sediment that it collected surficial sediment samples from the approximate center of the River and collected and analyzed five discrete samples from each of the three DMMU segments. The Corps admits that it used these fifteen samples to create three composite sediment samples for use in conducting certain aspects of its testing and analysis. The Corps admits that the approximate amount of sediment to be dredged from the three DMMU segments in 2015 is 180,000 cubic yards. The Corps denies the remaining allegations in Paragraph 70 of the Complaint.

71. The Corps admits that in April and May 2014 the Ohio EPA performed sediment sampling in the DMMU area. The Corps admits that Ohio EPA first shared the data obtained with the Corps on February 20, 2015, in a comment on the Corps' 2015 sampling program and after the Corps had finalized its determination of the Federal Standard and issued its Environmental Assessment/Finding of No Significant Impact for the 2015 dredging project. The Corps admits

15

that Ohio EPA requested that the Corps further evaluate the sediment using core samples. The Corps denies the remaining allegations in Paragraph 71.

72.  The Corps admits the allegations in Paragraph 72 of the Complaint.

73.  The Corps admits that it collected and analyzed four discrete samples from CLA-1 and used these discrete samples to create one composite sediment sample for use in conducting certain aspects of its testing and analysis.  The Corps admits that CLA-1 is roughly two square miles in area.  The Corps denies the remaining allegations in Paragraph 73.

74. The Corps admits that as part of the 2012 sampling and testing, the Corps performed Tier 1 physical and chemical testing, Tier 2 testing and modeling, and Tier 3 biological testing on the DMMU sediments as described in the Great Lakes Testing Manual and Inland Testing Manual.

75. The Corps admits that in 2013, the Corps evaluated its 2012 data according to the Great Lakes Testing Manual and Inland Testing Manual, and also considered, among other things, previous 2007 and 2010 data in this evaluation.

76. The Corps admits that as part of this evaluation described in Paragraph 76 above, the Corps documented the presence of preliminary contaminants of concern, including PCBs, in the DMMU sediments.  The Corps avers that its testing and evaluation of the sediment determined that notwithstanding the presence of some PCBs, open-lake disposal of the sediment would not have meaningful ecological effects.  The Corps denies the remaining allegations in Paragraph 76.

77. The Corps admits the Great Lakes Testing Manual is a non-binding document, read in conjunction with the national Inland Testing Manual, that the Corps considers to determine the appropriate placement of dredged material.  The allegations in Paragraph 77 also quote the Great

Lakes Testing Manual, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited Great Lakes Testing Manual or the Inland Testing Manual, the allegations are denied.

78. The Corps admits that in 2013, the Corps evaluated its 2012 data according to the Great Lakes Testing Manual and Inland Testing Manual, and also considered, among other things, previous 2007 and 2010 data in this evaluation.  The Corps admits that, with the exception of 1985 through 1993, the Corps had not engaged in open-lake disposal of sediment from the Cleveland Harbor Federal Navigation Channel in the last 40 years and that, in certain years, this decision was based on a finding that the sediment was not suitable for open-lake disposal.

79. The Corps denies the allegations in Paragraph 79 of the Complaint.

80. The Corps admits that in determining that the sediment from the Cleveland Harbor Federal Navigation Channel was suitable for open-lake disposal in 2015, the Corps did not conduct additional sampling in response to the results of its evaluation of the sediment under Tiers 1-3 of the Great Lakes Testing Manual and Inland Testing Manual.  The Corps denies the remainder of the allegations in Paragraph 80.

81.  The Corps admits that it used a mathematical model called the spatially explicit screening level exposure comparison model (SESLEC).  The Corps admits that this model is described in a draft guidance document and has not been peer reviewed or approved by U.S. EPA or other regulatory agencies at this time, but states that peer review or approval by other agencies is not required.  The Corps denies the remaining allegations in Paragraph 81.

82.  The Corps admits that it did not specifically consult with U.S. EPA, Ohio EPA, or other regulatory agencies as it proceeded through each of the specific tiers of analysis under the Great

Lakes Testing Manual and Inland Testing Manual.  The Corps avers that it consulted with, among others, Ohio EPA and the U.S. EPA prior to conducting its analysis of the sediment in the Cleveland Harbor Federal Navigation Channel and again before reaching its final determination that the Sixth Mile Sediment in 2015 was suitable for open-lake disposal.  The Corps denies the remaining allegations in Paragraph 82 of the Complaint.

83. The Corps admits that it has determined that the Federal Standard for disposal of approximately 180,000 cubic yards of dredged material from the Cleveland Harbor Federal Navigational Channel in 2015 is open-lake disposal in Lake Erie, rather than a CDF.  The Corps denies the remaining allegations of Paragraph 83.

84. The Corps admits the allegations in Paragraph 84 of the Complaint.

85.  The Corps denies that February 17, 2015, was the first and only date on which the Corps stated that it would no longer consider CLA-4 as a potential disposal site for the 2015 dredging at Cleveland Harbor.  The Corps admits the remaining allegations in Paragraph 85 of the Complaint.

86.  The Corps admits the allegations in Paragraph 86 of the Complaint.

87.  The Corps denies the allegations in Paragraph 87 of the Complaint.

88.  The Corps denies the allegations in Paragraph 88 of the Complaint.

89.  The Corps denies the allegations in Paragraph 89 of the Complaint.

90.  The Corps denies that it released its 2014 sampling to Plaintiffs.  The Corps admits that 2012 sampling, 2013 evaluation, and 2014 sampling indicate that the DMMU sediment contains PCBs.  The Corps avers that its testing and evaluation of the sediment determined that

notwithstanding the presence of some PCBs, open-lake disposal of the sediment would not have meaningful ecological effects.  The Corps denies the remaining allegations in Paragraph 90.

91. The Corps denies the allegations in Paragraph 91 of the Complaint.

92.  The Corps denies the allegations in Paragraph 92 of the Complaint.

93.  The Corps denies the allegations in Paragraph 93 of the Complaint.

94.  The allegations in Paragraph 94 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 94 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

95.  The allegations in Paragraph 95 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 95 also purport to paraphrase state statutes and regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited statutes and regulations, the allegations are denied.

96.  The Corps admits the allegations in Paragraph 96 of the Complaint.

97.  The Corps admits that it submitted an application to the State of Ohio for a water quality certification.  The Corps states that the content of the Corps' application speaks for itself.

98.  The allegations in Paragraph 98 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 98 also purport to paraphrase and quote state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

19

99.  The allegations in Paragraph 99 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 99 also purport to paraphrase and quote state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

100.  The allegations in Paragraph 100 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 100 also purport to paraphrase state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

101. The allegations in Paragraph 101 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 101 also purport to quote state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

102.  The allegations in Paragraph 102 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 102 also purport to paraphrase and quote statutes, federal regulations, and state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

103.  The allegations in Paragraph 103 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 103 also purport to paraphrase state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

104.  The allegations in Paragraph 104 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 104 also purport to paraphrase state regulatory rules, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

105.  The Corps admits the allegations in Paragraph 105.

106.  The Corps admits that Ohio EPA has issued a letter dated March 31, 2015, relating to water quality certification that does not authorize open-lake placement of dredged material from Cleveland Harbor in Lake Erie in 2015 but that states that all dredged material shall be disposed of in CDFs 9, 10B, or 12.  The Corps denies that the sediment is not suitable for open-lake placement.   The Corps states that the content of this document speaks for itself.

107.  The allegations in Paragraph 107 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 107 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

108.  The allegations in Paragraph 108 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 108 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

109.  The allegations in Paragraph 109 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 109 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

110.  The Corps admits the allegations in Paragraph 110 of the Complaint.

111.   The allegations in Paragraph 111 of the Complaint purport to paraphrase a state regulation and executive order, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

112. The allegations in Paragraph 112 of the Complaint purport to characterize a notice issued by ODNR on February 11, 2015, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

113.   The allegations in Paragraph 113 of the Complaint purport to characterize a notice issued by NOAA on February 13, 2015, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

114.  The allegations in Paragraph 114 of the Complaint state legal conclusions to which no response is required.   To the extent the allegations are inconsistent with the cited statute, the allegations are denied.  However, the Corps avers that its 2015 Project complies with all applicable law.

115.  The Corps admits the allegations in Paragraph 115 of the Complaint.

116. The allegations in Paragraph 116 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 116 also purport to paraphrase regulations, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

117.  The allegations in Paragraph 117 of the Complaint purport to characterize and quote certain provisions of Ohio's Coastal Management Plan, which speak for themselves and are the best

evidence of their content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

118.  The allegations in Paragraph 118 of the Complaint purport to characterize and quote certain provisions of Ohio's Coastal Management Plan, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

119.  The allegations in Paragraph 119 of the Complaint purport to characterize and quote certain provisions of Ohio's Coastal Management Plan, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

120.  The allegations in Paragraph 120 of the Complaint purport to characterize and quote certain provisions of Ohio's Coastal Management Plan, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

121.  The allegations in Paragraph 121 of the Complaint purport to characterize and quote certain provisions of Ohio's Coastal Management Plan, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

122.  The Corps admits that on February 20, 2015, the Ohio Department of Natural Resources responded to the Corps' consistency determination.  The remaining allegations in Paragraph 122 of the Complaint purport to characterize and quote from the ODNR's letter, which speaks for

itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited document, the allegations are denied.

123.  The Corps admits that when it submitted its proposed budget for 2015 to Congress, it planned to place the dredged sediment from the 2015 project into CDFs at federal expense.  The Corps further avers that after evaluation in 2013 of extensive sediment testing conducted in 2012 showed the dredged material suitable for open lake placement, the Corps determined in 2014 that CDF placement of material dredged from the Sixth Mile for the 2015 Project was no longer cost-justified. The Corps admits that there is sufficient space in CDFs to place all of the dredged material from the 2015 Project into the CDFs, but avers that there would not be sufficient space to do so in future years.

124.  The allegations in the first and fifth sentences of Paragraph 124 purport to characterize OEPA's March 31, 2015 letter, which speaks for itself and is the best evidence of its content. To the extent the allegations are inconsistent with the cited document, the allegations are denied. The allegations in the second, third, and fourth sentences of Paragraph 124 state conclusions of law to which no response is required.  To the extent a response is deemed required, the Corps denies the allegations and denies any legal duty to dredge the 2015 Project or to dispose of the dredged material in the manner proposed by the State.

125.  The allegations in Paragraph 125 of the Complaint purport to characterize the Corps' December 2014 Environmental Assessment and Finding of No Significant Impact, which speak for themselves and are the best evidence of their content.  To the extent the allegations are inconsistent with the cited documents, the allegations are denied.

24

126.  The Corps admits that open lake placement of DMMU sediment in Lake Erie was the Corps' Federal Standard determination for 2015 dredging at Cleveland Harbor but otherwise denies the allegations in Paragraph 133 of the Complaint.  The Corps denies that the Federal Standard determination was made on March 25, 2015 and avers that this determination was made in December 2014.

127.  The Corps denies the allegations in Paragraph 127 of the Complaint and denies any violation of law.

128.  The allegations in Paragraph 128 purport to characterize the Corps' letter dated March 6, 2015, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with that letter, they are denied.

129.  The allegations in Paragraph 129 purport to characterize the Corps' letter dated March 6, 2015, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with that letter, they are denied.

130.  The Corps admits the allegations in the first sentence of Paragraph 130 of the Complaint. The remaining allegations purport to characterize the Corps' February 20, 2015, bid solicitation and attachments thereto, which speak for themselves and are the best evidence of their content. To the extent the allegations are inconsistent with the document, they are denied.

131.  The Corps admits the allegations in Paragraph 131 of the Complaint.

132.  The Corps admits the allegations in Paragraph 132 of the Complaint.

133.  The Corps admits that open lake placement of DMMU sediment in Lake Erie was the Corps' Federal Standard determination for 2015 dredging at Cleveland Harbor but otherwise denies the allegations in Paragraph 133 of the Complaint.

134.  The Corps admits the allegations in the first sentence of Paragraph 134 of the Complaint. The remaining allegations seek to characterize correspondence from the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the documents, they are denied.

135.  The allegations in Paragraph 135 seek to characterize correspondence from the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the documents, they are denied.

136.  The allegations in Paragraph 136 seek to characterize correspondence from the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the documents, they are denied.

137.  The allegations in Paragraph 137 seek to characterize correspondence from the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the documents, they are denied.

138.  The Corps admits that when it submitted its proposed budget for 2015 to Congress, it planned to place the dredged sediment from the 2015 project into CDFs at federal expense.  The Corps further avers that after evaluation in 2013 of extensive sediment testing conducted in 2012 showed the dredged material suitable for open lake placement, the Corps determined in 2014 that CDF placement of material dredged from the Sixth Mile for the 2015 Project was no longer cost-justified. The Corps admits that there is sufficient space in CDFs to place all of the dredged

material from the 2015 Project into the CDFs, but avers that there would not be sufficient space to do so in future years.

139.   The allegations in Paragraph 139 seek to characterize a March 27, 2015, letter from the Director of OEPA, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the documents, they are denied.

140.  The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

141.  The allegations in Paragraph 141 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 141 also purport to paraphrase and quote a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

142.  The allegations in Paragraph 142 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 142 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

143.  The allegations in Paragraph 143 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 143 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

144.  The allegations in Paragraph 144 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 144 also purport to paraphrase a statute,

which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

145.  The allegations in Paragraph 145 of the Complaint state legal conclusions to which no response is required.

146.  The Corps denies the allegations in Paragraph 146 of the Complaint.

147.  The Corps denies the allegations in Paragraph 147 of the Complaint.

148.  The Corps denies the allegations in Paragraph 148 of the Complaint.

149.  The Corps denies the allegations in Paragraph 149 of the Complaint.

150.  The allegations in Paragraph 150 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 150 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

151.  The Corps denies the allegations in Paragraph 151 of the Complaint.

152.  The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

153.  The allegations in Paragraph 153 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 153 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

154. The allegations in Paragraph 154 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 154 also purport to characterize several regulations, which speak for themselves and are the best evidence of their content. To the extent the allegations are inconsistent with the cited regulations, the allegations are denied.

155. The allegations in Paragraph 155 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 155 also purport to characterize a statute and unspecified regulations, which speak for themselves and are the best evidence of their content. To the extent the allegations are inconsistent with the cited authorities, the allegations are denied.

156. The allegations in Paragraph 156 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 156 also purport to characterize several regulations, which speak for themselves and are the best evidence of their content. To the extent the allegations are inconsistent with the cited regulations, the allegations are denied

157. The allegations in Paragraph 157 of the Complaint state legal conclusions to which no response is required. The allegations in Paragraph 157 also purport to paraphrase a regulation, which speaks for itself and is the best evidence of its content. To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

158. The allegations in Paragraph 158 of the Complaint state legal conclusions to which no response is required.

159. The Corps admits that that it has placed substantially all of the material dredged from Cleveland Harbor in CDFs over the last 40 years, except for the material the Corps placed in the open lake between 1985 and 1993. The Corps admits that in certain years it placed such dredged

material in CDFs because its testing revealed it was not suitable for open lake placement. The Corps denies the remaining allegations in Paragraph 159 of the Complaint.

160. The allegations in the first two sentences of Paragraph 160 purport to characterize the EA/FONSI, which is the best evidence of its content and speaks for itself. To the extent the allegations are inconsistent with that document, they are denied. With respect to the allegations in the third sentence of Paragraph 160, the Corps admits that it initiated a bid solicitation process and an announced that the 2015 project would start in May 2015.

161. The allegations in Paragraph 161 state conclusions of law to which no response is required. To the extent a response is deemed required, the allegations are denied. The allegations in Paragraph 161 also purport to characterize the EA/FONSI, which is the best evidence of its content and speaks for itself. To the extent the allegations are inconsistent with that document, they are denied.

162. The allegations in Paragraph 162 state conclusions of law to which no response is required. To the extent a response is deemed required, the allegations are denied. The allegations in Paragraph 162 also purport to characterize the EA/FONSI, which is the best evidence of its content and speaks for itself. To the extent the allegations are inconsistent with that document, they are denied.

163. The allegations in the first two sentences of Paragraph 163 state legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied. The allegations in the third sentence of Paragraph 163 purport to characterize OEPA's March 31, 2015, letter which speaks for itself and is the best evidence of its content. To the extent the allegations are inconsistent with the letter, they are denied.

164.  The Corps denies the allegations in Paragraph 164 of the Complaint.

165.  The Corps denies the allegations in Paragraph 165 of the Complaint.

166.  The Corps admits that it solicited bids and awarded a contract for dredging the lower five miles of the Upper Cuyahoga River navigation project, but otherwise denies the allegations in Paragraph 166 of the Complaint.

167.  The allegations in Paragraph 182 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 182 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

168.  The allegations in the first sentence of Paragraph 168 state conclusions of law to which no response it required.  To the extent a response is deemed required, the allegations are denied. The allegations in the second sentence of Paragraph 168 are a characterization of Plaintiff' action to which no response it required.

169.  The allegations in Paragraph 169 state conclusions of law to which no response it required. To the extent a response is deemed required, the allegations are denied.

170.  The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

171.  The allegations in the first sentence of Paragraph 171 state conclusions of law to which no response it required.  The Corps further avers that the 2015 Project complies with all applicable law.

172.  The allegations in Paragraph 172 purport to characterize the ODNR's February 20, 2015, letter to the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with that document, they are denied.

173.  The allegations in Paragraph 173 purport to characterize the OEPA's March 31, 2015, letter to the Corps, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with that document, they are denied.

174.  The Corps denies the allegations in Paragraph 174 of the Complaint.

175.  The Corps denies the allegations in Paragraph 175 of the Complaint.

176.  The allegations in Paragraph 176 state conclusions of law to which no response it required. To the extent a response is deemed required, the allegations are denied.

177.  The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

178.  The allegations in Paragraph 178 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 178 also purport to paraphrase and quote a regulation, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

179.  The allegations in Paragraph 179 of the Complaint state legal conclusions to which no response is required.   The allegations in Paragraph 179 also purport to quote a regulation, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

180.  The allegations in Paragraph 180 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 180 also purport to paraphrase a regulation, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

181.  The allegations in Paragraph 181 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 181 also purport to paraphrase a regulation, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited regulation, the allegations are denied.

182.  The allegations in Paragraph 182 of the Complaint state legal conclusions to which no response is required.  The allegations in Paragraph 182 also purport to paraphrase a statute, which speaks for itself and is the best evidence of its content.  To the extent the allegations are inconsistent with the cited statute, the allegations are denied.

183.  The Corps denies the allegations in Paragraph 183 of the Complaint.

184.  The Corps denies the allegations in Paragraph 184 of the Complaint.

185.  The Corps denies the allegations in Paragraph 185 of the Complaint.

186.  The Corps denies the allegations in Paragraph 186 of the Complaint.

187.  The Corps denies the allegations in Paragraph 187 of the Complaint.

188.  The Corps denies the allegations in Paragraph 188 of the Complaint.

189.  The Corps denies the allegations in Paragraph 189 of the Complaint.

190.   The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

191.  The allegations in Paragraph 191 state conclusions of law to which no response it required. To the extent a response is deemed required, the allegations are denied.

192.  The Corps admits that under 33 C.F.R. § 335.7, the Corps identifies the dredged material placement method that represents the least costly alternative consistent with sound engineering practices and meets the environmental standards established by the Clean Water Act section 401(b)(1) evaluation process.  This alternative is determined to be the Federal Standard and establishes the maximum investment the Corps may make to dispose of dredged material.  The Federal Standard also establishes the basis against which any alternatives proposed by a non-Federal partner can be implemented provided the non-Federal partner contributes any difference in cost.  The Corps denies the remaining allegations in Paragraph 192.

193.  The Corps admits that, for certain cargo ships, if the Cleveland Harbor Federal Navigation Channel is not dredged, portions of the navigation channel will likely eventually become shallower than the minimum operation depths and/or will no longer be navigable.  The Corps denies the remaining allegations in Paragraph 193 of the Complaint.

194.  The allegations in Paragraph 194 state conclusions of law to which no response it required. To the extent a response is deemed required, the allegations are denied.

195.  The Corps denies the allegations in Paragraph 195 of the Complaint.

196.  The Corps hereby repeats and incorporates by reference its responses to the foregoing Paragraphs of the Complaint as set forth above.

197.  The Corps denies the allegations in Paragraph 197 of the Complaint.

198.  The Corps denies the allegations in Paragraph 198 of the Complaint.

199.  The Corps denies the allegations in Paragraph 199 of the Complaint.

200.  The Corps denies the allegations in Paragraph 200 of the Complaint.

201.  The Corps denies the allegations in Paragraph 201 of the Complaint.

The Corps denies each and every allegation of the Complaint not specifically admitted in its responses to the Complaint's specific paragraphs, set forth above.  The remaining paragraphs of the Complaint consist of Plaintiff's request for relief, which does not require a response.  To the extent a response is required, the Corps denies that Plaintiff is entitled to any of the relief sought, or any other relief.

## **DEFENSES**

### First Defense

One or more counts of the Complaint fails to state a claim upon which relief can be granted.

### Second Defense

One or more counts of the Complaint is barred by the applicable statute of limitations.

### Third Defense

The Corps actions were not arbitrary and capricious and did not violate the APA or any other applicable law.

Respectfully submitted this 11th day of June, 2015,


JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural
Resources Division

*/s/ Benjamin R. Carlisle*
STACEY BOSSHARDT
BENJAMIN R. CARLISLE
U.S. Department of Justice
Environment and Natural Resources
Division
P.O. Box 7611
Washington, D.C. 20004
(202) 514-2912 - Bosshardt
(202) 514-9771 - Carlisle
(202) 514-8865 - Facsimile
Stacey.bosshardt@usdoj.gov
Benjamin.carlisle@usdoj.gov


ALAN D. GREENBERG
U.S. Department of Justice
Environmental Defense Section
999 18th Street, Suite 370
Denver, Colorado  80202
Phone: (303) 844-1366
Fax: (303) 844-1350
E-mail:  alan.greenberg@usdoj.gov


STEVEN M. DETTELBACH
United States Attorney
Northern District of Ohio

David Ruiz (#0074543)
Assistant United States Attorneys
801 West Superior Avenue, Suite 400
Cleveland, OH  44113
(216) 622-3718- Ruiz

(216) 522-4982 - Facsimile
david.ruiz@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby state and certify that on June 11, 2015, I have filed the foregoing Answer using the ECF system, and that such document will be served electronically on all parties of record.

*/s/ Benjamin R. Carlisle*

BENJAMIN R. CARLISLE