# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| STATE OF OHIO, *et al.*, | ) | CASE NO. 1:15-CV-00679 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

___

### *AMICUS CURIAE* BRIEF OF CUYAHOGA COUNTY IN SUPPORT OF FINDING THAT THE UNITED STATES ARMY CORPS OF ENGINEERS WAS ARBITRARY AND CAPRICIOUS IN SETTING OPEN-LAKE DISPOSAL AS THE FEDERAL STANDARD

___

Respectfully Submitted,

**Cuyahoga County Department of Law**
**ROBERT J. TRIOZZI, Director (0016532)**

*/s/ Robin M. Wilson*
Robin M. Wilson (0066604)
Chief Trial Council
County Administrative Headquarters
2079 East 9th Street
Cleveland, OH 44115
(216) 443-7042 (Telephone)
(216) 698-2744 (Facsimile)
rwilson@cuyahogacounty.us
    *Attorneys for Amicus Curiae Cuyahoga County*

[Representation and designation pursuant to August 27, 2013 Agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Department of Law]

1

I.     INTRODUCTION

A central issue in this case is whether the Corps has mis-read Federal statutes and interpreted its regulations in a way that impermissibly rejects the State of Ohio's explicit authority to set clean water standards. Cuyahoga County submits that the Corps' interpretation of its own regulations as submitted to this Court is "plainly erroneous and inconsistent." The Corps' decision to order "open lake disposal" for the purpose of effectuating a pre-determined agency policy choice is not in accordance with the law and is arbitrary, capricious and an abuse of discretion. Given the importance of keeping the waters of Lake Erie and the Cuyahoga River clean, the Corps' actions and determinations in this case are particularly egregious. With this Brief, Cuyahoga County seeks to refute many of the assertions made by the Corps in its summary judgment filing for the purpose of providing a fuller and more complete perspective regarding the Corps' assertions relating to the "federal taxpayer" as compared to the existing local burdens under the Clean Water Act.

II.     LEGAL ANALYSIS

**A. The Corps references to "federal taxpayer" are misleading and belie the Corps divergence from Congressional intent.**

The Corps' Summary Judgment brief makes the unfounded assertion that the issue before the Court is, in part, "whether the State will be permitted to shift extra costs of its preferred (and unnecessary) method of sediment disposal onto the Federal taxpayer despite the Corps' controlling Federal Standard regulations and thoroughly reasoned scientific analysis." Doc # 104-1, PageID # 9478, 9480, 9482. The Corps' rhetorical assertion requires context, because that assertion is not the issue of import before this Court. The issue before the Court is whether the Corps' focus on its own interpretation of Federal Standard regulations can be allowed to

frustrate Congressional statutes and directives and thereby shift extra costs locally from the very Federal fund intended by Congress to maintain the Cleveland Harbor.

In contrast to the impression offered in the Corps' summary judgment briefing, the Federal funds at issue for maintenance of the Cleveland Harbor and other commercial Great Lakes ports is **not** from the general "federal taxpayer" fund derived from citizens paying income taxes. The funds at issue for the maintenance of Cleveland Harbor are from the Federal Harbor Maintenance Trust Fund. See, for example, AR-SUPP0755689 (Ex. 1) stating:

> In 1986, Congress enacted the Harbor Maintenance Tax (HMT) to recover operation and maintenance (O&M) costs at U.S. coastal and Great Lakes harbors **from maritime shippers**. O&M is mostly the dredging of harbor channels to their authorized depths and widths. The tax is levied on importers and domestic shippers using coastal or Great Lakes ports. . . . The tax is assessed at a rate of 0.125% of cargo value ($1.25 per $1,000 in cargo value). The tax revenues are deposited into the Harbor Maintenance Trust Fund (HMTF) from which Congress appropriates funds for harbor dredging.[1] (Emphasis added.)

When Congress appropriated sufficient funds for the 2015 dredging of Cleveland Harbor to the authorized project depths to maintain safe commercial navigation (of which there is no dispute), Congress appropriated those funds from the Harbor Maintenance Trust Fund. Dkt. # 13-20, PageID # 913, 915 and 950 (Ex. 2).[2] The appropriated funds were not from general Federal funds paid by individuals' Federal income taxes, but instead are from a specific fund dedicated to

---

[1] See also AR-SUPP0755691 ("In 1986, the Harbor Maintenance Tax (HMT) was enacted to fund U.S. Army Corps of Engineers'…activities related to the routine operation and maintenance…at harbors, namely the dredging of harbor channels to their authorized depths and widths.") Ex. 1.

[2] "The [FY2015] Budget gives priority to those coastal harbors and inland waterways with the most commercial traffic, and increases the total amount to be spent from the Harbor Maintenance Trust Fund to $ 915 million, a level that his higher than in previous budgets." Dkt # 13-20, PageID # 915, Ex. 2.

Great Lakes harbor maintenance.   Congress expressly intended these monetary resources to be used for Cleveland consonant with its statutory directive under 33 USC 426o-2(a):

> **Using available funds**, the Secretary **shall expedite** the operation and maintenance, including **dredging**, of the navigation features of the Great Lakes and Connecting Channels for the purpose of supporting commercial navigation to authorized project depths. (Emphasis added.)

The Corps' efforts to force local entities to either allow open-Lake disposal or to pay the cost for other disposal methods must be viewed as a direct deviation of agency action from express Congressional statutory intent. See AR-SUPP0644645, Ex. 3.  The Corps must abide by Congressional mandates to spend the funds Congress directed to comply with the Clean Water Act and achieve its goals as well as the goals of the Water Resources Development Act. *La. Pub. Serv. Com v. FCC*, 476 U.S. 355, 374-75 (1986).

### B.  The people of Cuyahoga County and the region are spending billions to protect Lake Erie to the highest level possible.

In contrast to the Corps' attempts to shift costs onto non-Federal funders through what can only be characterized as illegal regulatory and budgetary manipulation, the citizens of Cuyahoga County and northeast Ohio are heavily investing in improving the water quality of Lake Erie and achieving the goals of the Clean Water Act.   The most salient example is the Federal Consent Decree entered by this Court on June 30, 2011 in *U.S and State of Ohio v. NEORSD*, Case No: 1:10-cv-02895-DCN, Dkt # 23 (Ex. 4).

As the U.S. Department of Justice explained to this Court in its motion for entry of that consent decree in 2011:

- The "proposed Consent Decree mandates the implementation of a comprehensive program of remedial measures the United States and the State deem necessary to achieve the pertinent goals of the CWA by significantly reducing . . .discharges of pollutants into receiving waters." Dkt # 17-1, PageID # 200;

- "Those receiving waters include Lake Erie, the Cuyahoga River. . .many parts of which are sensitive areas designated for body contact uses by the public." *Id. See also Id.* at PageID # 215 ("EPA identified 22 CSO outfalls that it considered "priority" outfalls due to the volume and frequency of discharges and the outfall's proximity to Lake Erie and other sensitive areas.");

- "Ohio EPA has designated **all** of Lake Erie as 'bathing waters,' its most protective classification for the designated use recreation." *Id.* at PageID # 202;

- The cost to local ratepayers to achieve the goals of the Clean Water Act was estimated at **$3 billion.** *Id.* at PageID # 197;

- This **$3 billion cost of remedial** work will be a **high burden** on the people of Northeast Ohio. *Id.* at PageID # 235; and

- Compliance with the burdensome Consent Decree "is already underway." *Id.* at PageID # 231.

(Dkt. 17-1, Exhibit 5) (emphasis added).

The people of Cuyahoga County and northeast Ohio continue to spend **billions of local dollars** to meet Ohio's water quality standards and protect the sensitive area of Lake Erie to the highest possible standards. This investment remains a heavy burden locally. ALL of Lake Erie is a "sensitive water" worthy of the highest protection. It is logically irreconcilable for the Federal government to set a standard for dredged material disposal that threatens the health of a sensitive water body and to simultaneously impose a burdensome remedial program on the local citizens to remediate and protect that same water body.

**C. The Corps' efforts to shift millions to non-Federal payers is in contravention of the law and the demonstrated local commitment to protecting Lake Erie.**

The Corps should be pursuing long-range efforts to protect safe commercial navigation in Cleveland Harbor consistent with the fundamental goal of keeping hazardous pollutants (such as PCBs) out of Lake Erie and minimizing open-lake placement of dredge disposal. PL 114-322, Section 1189, December 16, 2016, 130 Stat. 1628. For the Corps to take extreme efforts to circumvent the CWA, Ohio's water quality standards and Congress's directive to minimize

5

open-water disposal of dredged material is arbitrary and capricious.  Moreover, for the Corps to re-allocate funds Congress expressly directed for the maintenance of Cleveland Harbor away from the Harbor is disrespectful to the commitment of billions of dollars by local people to protect Lake Erie.

In support of its actions, the Corps repeatedly points to an obligation to determine "the least costly alternative" to "establish the maximum expenditure of Federal taxpayer funds." Dkt # 104-1, PageID 9480. *See also,* 33 C.F.R. 335.7.  By ignoring the obligation to determine an alternative "meeting the environmental standards established by the 404(b)(1) evaluation process," the Corps is trying to save from the Federal Harbor Maintenance Trust Fund a tiny fraction of the amount being expended locally to clean-up and protect Lake Erie. *Id.*  The Corps' Federal Standard determination does not consider or account for the billions of local dollars being expended on a comprehensive remediation program for the relevant area in Lake Erie. In this regard, not only is the Corps' environmental analysis improper, but its cost analysis is inadequate. The Federal Standard determination of open lake disposal is arbitrary, and capricious.

This is not a local and State attempt to shift costs to "the federal taxpayer" as the Corps suggests in its motion for summary judgment. Cuyahoga County has a vital interest in the economic health of the County and its citizens.  Safe sustained commercial navigation in Cleveland Harbor is integral to that economic health.  Cuyahoga County also has a fundamental interest in the environmental and public health of the land and water resources of the County, including the Cuyahoga River and the water and lakebed of Lake Erie.  The people of Cuyahoga County and Northeast Ohio are spending billions to abide by Ohio's water quality regulations

6

and to protect Lake Erie to the highest level possible, which is consistent with Federal and international Great Lakes policy.

Cuyahoga County, therefore, urges this Court to bar the Corps from circumventing the will of Congress and imperiling the economy of this region, the state and the continued improvement of Lake Erie by its capricious action and regulatory manipulation.  The Corps attempt to shift One Million, One Hundred Thirty Five Thousand, Five Hundred and Fifty Dollars ($1,135,550) in Federal funds authorized by Congress for Cleveland Harbor away from the Harbor is unconscionable where the people of the region are spending billions to improve and protect Lake Erie.

### III.	CONCLUSION

Cuyahoga County urges this Court to find that in setting and applying its 2014 Federal Standard, the Corps acted arbitrarily, capriciously and/or illegally.  It also asks the Court to order that the previous Federal Standard of CDF disposal for Cleveland Harbor dredged material prevails, and to order the Corps to conduct annual dredging to authorized project depths at full Federal expense.

Respectfully Submitted,

**Cuyahoga County Department of Law**
**ROBERT J. TRIOZZI, Director (0016532)**

*/s/ Robin M. Wilson*
Robin M. Wilson (0066604)
Chief Trial Council
County Administrative Headquarters
2079 East 9th Street
Cleveland, OH 44115
(216) 443-7042 (Telephone)
(216) 698-2744 (Facsimile)
rwilson@cuyahogacounty.us

*Attorneys for Amicus Curiae Cuyahoga County*

[Representation and designation pursuant to August 27, 2013 Agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Department of Law]

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 15th day of February, 2017, a copy of the foregoing was filed electronically via the Court's electronic filing system to all parties indicated on the electronic filing receipt.

               Respectfully Submitted,

               **Cuyahoga County Department of Law**
               **ROBERT J. TRIOZZI, Director (0016532)**

               */s/ Robin M. Wilson*
               Robin M. Wilson (0066604)
               Chief Trial Council
               County Administrative Headquarters
               2079 East 9th Street
               Cleveland, OH 44115
               (216) 443-7042 (Telephone)
               (216) 698-2744 (Facsimile)
               rwilson@cuyahogacounty.us

               *Attorneys for Amicus Curiae Cuyahoga County*

               [Representation and designation pursuant to August 27, 2013 Agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Department of Law]